IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2002

## STATE OF TENNESSEE v. TERRENCE JEROME JACKSON

**Direct Appeal from the Circuit Court for Madison County**
**No. 97-550     Roy B. Morgan, Jr., Judge**

---

**No. W2001-01001-CCA-R3-CD - Filed February 1, 2002**

---

The defendant appeals the revocation of his probation and reinstatement of his original six-year sentence for aggravated assault.  The trial court found the defendant violated the terms of his probation by failing to verify employment, failing to exhibit conduct consistent with good citizenship, and failing to comply with curfew requirements; thus, it revoked his probation.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

George Morton Googe, District Public Defender; and Stephen P. Spracher, Assistant District Public Defender, for the appellant, Terrence Jerome Jackson.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Darlene Millson, an officer with the Board of Probation and Parole, testified at the revocation hearing that she began supervision of the defendant on August 21, 2000, and explained the probation rules to the defendant, which he stated he understood.  On October 11 and November 6, 2000, Millson went to the defendant's residence at approximately 7:15 p.m. to verify his curfew compliance, which required him to be at his residence from 6:00 p.m. to 6:00 a.m.  On both occasions the defendant was not present.  She further testified the defendant neglected to inform her of his arrest for assault on March 9, 2001, and he neglected to provide proof of employment despite her numerous requests.  On cross-examination, Millson conceded that she received fax notification of the defendant's new arrest from the jail; her office refuses to accept collect phone calls; and the defendant explained his lack of employment verification because he was paid in cash.  She further

testified that the defendant provided a hospital emergency room record showing he was at the hospital on October 11th; however, the record revealed he was there at 9:25 p.m., not 7:15 p.m.

Keeba Jackson, the defendant's niece, testified that she resided with the defendant. She stated the defendant's new arrest resulted from an altercation on March 9, 2001, when she was struck while attempting to break up a fight between the defendant and her boyfriend. Jackson conceded she informed the officers who responded to the call that the defendant was the person who struck her, but she testified that she was actually unsure who hit her.

The defendant testified he instructed the officers to fax Millson notice of his arrest because her office refused phone calls from the jail. He explained he was prevented from securing permanent employment due to a broken leg, so he worked at "small jobs like babysitting and maybe washing dishes for people . . . ." The defendant explained that on October 11th he took a bus to the hospital. Although unsure of the approximate time he left his residence, he was certain Millson was not at his home at 7:15 p.m. When asked about Millson's testimony that he missed curfew on November 6th, he stated, "I don't know nothing [sic] about that."

Keeba Jackson was recalled and testified that Millson came by their residence between 9:30 p.m. and 10:00 p.m. on October 11th, and she informed Millson that the defendant was at the hospital. Jackson explained they were having a birthday party that evening and stopped it due to the defendant's medical condition. She said the defendant's grandmother called someone to take him to the hospital, and "[e]verybody else went to the hospital with him, but I wanted to stay at home." Jackson further recalled that Millson stopped at their residence on other occasions when the defendant was not present, and she was unable to account for the defendant's whereabouts on those occasions.

In rebuttal, Darlene Millson stated no one at the defendant's residence on October 11th informed her that he was at the hospital.

The trial court concluded the evidence was insufficient to establish the defendant neglected to report his arrest to Millson. However, the trial court found that the defendant failed to exhibit conduct consistent with good citizenship due to his participation in a fight; he failed to submit employment verification to Millson; and he violated curfew on October 11th and November 6th. Placing "great weight" on the defendant's curfew violations, the court revoked his probation and ordered that he serve his sentence in confinement.

## PROBATION REVOCATION

The defendant contends the trial court erroneously revoked his probation and erroneously ordered that he serve his sentence. We disagree.

### A. Standard of Review

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, 311. The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation is subject to an abuse of discretion standard of review, rather than a *de novo* standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation has occurred. *Id.*; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt. Gregory, 946 S.W.2d at 832; State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

## B. Analysis

The defendant argues the proof was insufficient to establish a violation of curfew because the hospital emergency room record established the defendant was at the emergency room on October 11th. Millson testified the defendant provided her "some papers saying he was at the hospital, but it showed the time as 9:25 [p.m.] and not at 7:15 [p.m. on October 11th]." The court took "judicial notice" that the time documented on the emergency room record was the time of the patient's initial arrival. Although the defendant now contests the trial court's taking judicial notice of this fact, he voiced no objection at the hearing. *See* Tenn. R. Evid. 201(e). By failing to challenge the propriety of the judicial notice, a defendant waives appellate consideration of the issue. State v. Nunley, 22 S.W.3d 282, 287 (Tenn. Crim. App. 1999). Furthermore, the hospital record, which is the subject of this dispute, was not introduced at the hearing and is not in the record. It is the duty of the accused to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see* State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). This issue is waived.

As to the November 6th curfew violation, the defendant had no explanation other than saying, "I don't know nothing [sic] about that." The trial court could, therefore, properly find a violation based on this incident, regardless of the October 11th incident.

The defendant further argues the proof was insufficient to establish he failed to verify his employment. Millson testified the defendant failed to provide her with proof of employment even though she asked him for proof during every meeting. This testimony sufficiently establishes a probation violation.

Finally, the defendant contends the evidence was insufficient to establish that he committed the assault on March 9th. A trial court may not rely upon a mere arrest to revoke probation. Harkins, 811 S.W.2d at 83 n.3. "Conduct inconsistent with good citizenship," which was mentioned by the trial court, was formerly a statutory basis for revocation. *See* Tenn. Code Ann. § 40-2907 (1955); Finley v. State, 214 Tenn. 149, 378 S.W.2d 169, 171 (Tenn. 1964); *see also* 1961 Tenn. Pub. Acts, Chapter 95, § 7 (rewriting the statute and deleting the "good citizenship" language). The present statute omits this language and simply requires a "breach of the laws of this state or [a violation of] the conditions of probation." Tenn. Code Ann. § 40-35-311(a)(Supp. 2001). It is

generally recognized that in order to prevail in a revocation proceeding based upon allegations of criminal misconduct, the state must show by a preponderance of the evidence that the defendant violated the law. State v. Michael Harlan Byrd, No. 01C01-9609-CC-00411, 1998 WL 216859, at *7 (Tenn. Crim. App. May 1, 1998, at Nashville). The state need not show a conviction for the new offense, but it should show by a preponderance of the evidence that the defendant violated the law. *See* State v. Andrew B. Edwards, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000, at Jackson), *perm. to app. denied* (Tenn. 2000).

Here, the trial court apparently relied upon the testimony of Keeba Jackson regarding the defendant's altercation with her boyfriend. It is questionable whether her testimony would support a finding by a preponderance of the evidence that the defendant violated the law. Regardless, the trial court had ample basis to revoke probation based upon the curfew violations and failure to verify employment.

## CONCLUSION

We conclude the trial court was well within its discretion to revoke the defendant's probation. Accordingly, we affirm.

_____
JOE G. RILEY, JUDGE